**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| ONE PLACE CAPITAL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-cv-829-SDJ-KPJ |
| | § | |
| MICHAEL OAKES, | § | |
| *individually and doing business as* | § | |
| NEOGRAFT RESOURCES, LLC, | § | |
| | § | |
| Defendant. | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Plaintiff One Place Capital's ("One Place") Motion for Summary Judgment (the "Motion") (Dkt. 33), wherein One Place seeks summary judgment on all three claims raised against Defendant Michael Oakes ("Oakes"), individually and doing business as Neograft Resources, LLC. Oakes, who is proceeding *pro se* in this matter, has not filed a response to the Motion. Having considered the Motion, the accompanying evidence, and the record, the Court recommends the Motion (Dkt. 33) be **GRANTED**.

**I.   BACKGROUND**

One Place is a "financing company that holds a portfolio consisting primarily of equipment financing transactions for medical, dental, and veterinary practitioners throughout the United States." *See* Dkt. 1 at ¶ 6. One Place's claims in this case arise from a wire transfer it made on May 19, 2015 to a Bank of America account for $96,590.00 that was intended for Neograft **Solutions**, Inc. ("Neograft Solutions"). *Id*. at ¶¶ 13–19 (emphasis added). The Bank of America account was in Oakes' sole control. *Id*. at ¶ 8. According to One Place, Oakes is a former member of Neograft

Solutions, for whom he did business as Neograft Resources, LLC ("Neograft Resources").[1] *Id.* at ¶¶ 3, 7. One Place and Neograft Solutions allegedly made numerous attempts to have Oakes return the funds, but he refused to do so. *Id.* at ¶ 19.

**1. Procedural History**

On November 21, 2018, One Place filed this lawsuit against Oakes, asserting three claims under Texas law: a violation of the Texas Theft Liability Act, TEX. CIV. PRAC. & REM. CODE § 134.001 *et seq.* and TEX. PENAL CODE § 31.03 (Count I); conversion of funds (Count II); and in the alternative to Count II, money had and received (Count III). *See* Dkt. 1. One Place asserted federal jurisdiction on the basis of diversity of citizenship. *Id.* at 1–2.

After Oakes failed to answer or otherwise respond to the complaint, One Place obtained a Clerk's entry of default (Dkt. 12) and moved for default judgment (Dkt. 13) on July 18, 2019. On September 11, 2019, the case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to 28 U.S.C. § 636 and Local Rule CV-72. *See* Dkt. 16. On February 19, 2020, the Court held a hearing on One Place's motion for default judgment. *See* Dkt. 26 at 2. Oakes appeared at the hearing, representing himself, and subsequently filed an answer to the complaint on March 2, 2020. *See* Dkt. 26 at 2; Dkt. 27. On March 11, 2020, the Court vacated the Clerk's entry of default and denied One Place's motion for default judgment without prejudice to refiling. *See* Dkt. 28.

The Court next set a Rule 16 scheduling conference for June 9, 2020. *See* Dkt. 29. In the joint Rule 26(f) report (Dkt. 31), Oakes alerted the Court to a state court proceeding, *Neograft Solutions, Inc. v. Michael Oakes et al.*, No. 15-09638-158, Orig. Pet. (158th Dist. Ct., Denton Cnty.

---

[1] Neograft Resources is also referred to as Neograft Resource Group, LLC in other filings in this case as well as a related state court proceeding, *Neograft Solutions, Inc. v. Michael Oakes et al.*, No. 15-09638-158, Orig. Pet. (158th Dist. Ct., Denton Cnty. Nov. 9, 2015).

Nov. 9, 2015) (hereinafter "*Neograft I*" or "Orig. Pet."),[2] that he indicated may be related to this proceeding. *See* Dkt. 31 at 2. The Court takes judicial notice of the state court proceeding. Neograft Solutions, the plaintiff in the state court case, "is a distributor of patented and highly specialized medical equipment that is used by doctors and plastic surgeons for hair transplant[] procedures on patients suffering from severe hair loss." *See* Orig. Pet. ¶ 7. In July 2008, Neograft Solutions allegedly entered into a consulting agreement with Oakes. *Id.* ¶ 9. Under the agreement, Oakes was to handle Neograft Solutions' sales operations in the United States. *Id.* ¶¶ 8–9. Oakes was purportedly "authorized to use the assumed name 'NeoGraft Resource Group, LLC' as a dba relating to his consulting services." *Id.* ¶ 9. Neograft Solutions alleges that, over time, Oakes "became more and more controlling over NeoGraft[] [Solutions'] business and began to improperly hold himself out as owning NeoGraft [Solutions], when in fact he was just a consultant." *Id.* ¶ 12. Oakes allegedly engaged in misconduct, which led Neograft Solutions to "no longer trust him." *Id.* ¶ 17. In early 2015, Neograft Solutions terminated its consulting agreement with Oakes. *Id.* Thereafter, Neograft Solutions discovered "a number of actions and diversion schemes that [Oakes] created to embezzle or otherwise divert millions of dollars" from Neograft Solutions. *Id.* ¶ 18. In total, Neograft Solutions claims to have "uncovered approximately $2,000,000 in funds that have been misappropriated or otherwise diverted as a result of [Oakes'] actions." *Id.* ¶ 22. Neograft Solutions raised several contract-based and fraud claims against Oakes in the state court proceeding, which is presently set for trial on October 25, 2021. *Id.* ¶¶ 23–49; *See* No. 15-09638-158, Sch. Order and Discovery Control Plan (431st Dist. Ct., Denton Cnty. Apr. 9, 2021).

---

[2] This case has since been transferred to the 431st Judicial District Court, Denton County, Texas.

In addition to suing Oakes in *Neograft I*, Neograft Solutions also sued One Place. *See Neograft Solutions, Inc. v. One Place Capital*, No. 4:17-cv-379, Dkt. 1 (E.D. Tex. June 2, 2017) ("*Neograft II*"). On June 2, 2017, One Place removed *Neograft II* to this Court. *Id*. Therein, Neograft Solutions alleged that "One Place financed the purchase of a NeoGraft machine in the amount of $96,590.00 for a Dr. Zelko, and was to transfer these funds to NeoGraft via wire transfer." *See* No. 4:17-cv-379, Dkt. 1-2 at ¶ 10. Neograft Solutions emailed its account information to a One Place employee. *Id*. ¶ 12. Despite receiving Neograft Solutions' information, One Place allegedly wired the funds to "a different account."[3] *Id*. ¶ 13. Neograft Solutions then delivered the machine to Dr. Zelko. *Id*. ¶ 14. After realizing it had not been paid, Neograft Solutions requested One Place to resend the funds, which One Place refused to do. *Id*. ¶¶ 14–15. One Place's refusal prompted Neograft Solutions to initiate *Neograft II*. The parties eventually reached a settlement, and Neograft Solutions dismissed all claims against One Place with prejudice. *See* No. 4:17-cv-379, Dkt. 30.

This case, in turn, is One Place's suit against Oakes to recover the $96,590.00 it wired to Oakes' bank account. In his answer, Oakes asserted that the funds were wired "as a normal course of business" and were purportedly "payment to NeoGraft Resource Group LLC as Neograft Solutions owes approximately $300,000 to NeoGraft Resource Group LLC." *See* Dkt. 27 at 1.

On May 15, 2020, One Place served requests for admissions on Oakes. *See* Dkt. 33-2 at 15–21, 32, 79–86 (service of requests by certified mail, certified mail with return receipt requested, FedEx, and email). On December 3, 2020, One Place filed the present Motion seeking summary

---

[3] In its answer to the complaint filed by Neograft Solutions, One Place admitted that it requested wire transfer instructions from Neograft Solutions, but denied that Neograft Solutions communicated the requested instructions in an email to a One Place employee on May 13, 2015. *See* No. 4:17-cv-379, Dkt. 8 at ¶¶ 11–12. Further, One Place alleged in its answer that the Bank of America account was owned by Neograft Solutions. *Id*. at ¶ 13. Indeed, Oakes was not mentioned in One Place's answer at all.

judgment on all claims. Dkt. 33. Therein, One Place represents that Oakes did not respond to the requests for admission. *See* Dkt. 33-1 at 3. Nor has Oakes responded to the Motion, despite the Court entering an order directing him to submit a response, if any, to the Motion on or before fourteen (14) days following service of the order. *See* Dkts. 34, 35, 40.

On July 20, 2021, the Court held oral argument on the Motion. *See* Dkt. 47. Despite receiving notice of the argument, Oakes did not appear. *See* Dkts. 42, 44, 46. During oral argument, One Place confirmed that its claims are solely against Oakes.[4] Accordingly, the Court proceeds with considering the Motion.

### 2. Admissions of Fact for Summary Judgment

As a preliminary matter, the Court finds that Oakes does not controvert the facts relevant to deciding the Motion for two reasons. First, under Eastern District of Texas Local Rule 7(e), "a party opposing a motion has fourteen days . . . from the date the motion was served in which to file a response and any supporting documents, after which the court will consider the submitted motion for decision." LOCAL R. CV-7(e). "A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion." *Id.* at CV-7(d). Because Oakes has not filed a response, even after being afforded an abundance of additional time to respond, the

---

[4] The complaint names Michael Oakes individually and doing business as Neograft Resources, LLC. *See* Dkt. 1. During oral argument, One Place stated that Oakes is the sole defendant in this lawsuit, as Neograft Resources, LLC is an assumed name that Oakes used in doing business for Neograft Solutions. *See* Dkt. 47; *See also Horie v. Law Offs. of Art Dula*, 560 S.W.3d 425, 434 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (stating that "the assumed name of a sole proprietorship is not a separate legal entity or even a different capacity of the individual sole proprietor"); *see also Duval v. Midwest Auto City, Inc.*, 425 F. Supp. 1381, 1387 (D. Neb. 1977), *aff'd* 578 F.2d 721 (8th Cir. 1978) ("The designation 'd/b/a' means 'doing business as' but is merely descriptive of the person or corporation who does business under some other name. Doing business under another name does not create an entity distinct from the person operating the business. The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his obligations. So also with a corporation which uses more than one name.").


Court presumes he does not controvert the facts set out by One Place, and has no evidence to offer in opposition to the Motion.

Second, because Oakes failed to respond to the requests for admission, the Court agrees with One Place that the requests should be deemed admitted for purposes of ruling on the Motion. "Under Federal Rule of Civil Procedure 36(a), requests for admissions are deemed admitted if not answered within 30 days." *Murrell v. Casterline*, 307 F. App'x 778, 780 (5th Cir. 2008); *See* FED. R. CIV. P. 36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."). "Any matter admitted under Rule 36 is deemed conclusively established unless the court permits withdrawal of the admission." *See Murrell*, 307 F. App'x at 780 (citing FED. R. CIV. P. 36(b); *see also Armour v. Knowles*, 512 F.3d 147, 154 n.13 (5th Cir. 2007). "Further, if the requests for admissions concern an essential issue, the failure to respond to requests for admission can lead to a grant of summary judgment against the non-responding party." *See Murrell*, 307 F. App'x at 780. The following facts are therefore deemed admitted and undisputed for purposes of deciding the Motion.

According to the declaration of One Place's president, Scott Stewart, One Place was provided a Bank of America account number ending in #5535 (the "Bank Account") in the course of its dealings with Neograft Solutions prior to the departure of Oakes. *See* Dkt. 33-3 at 1, 3. Oakes was the owner of the Bank Account. *See* Dkt. 33-2 at 10. One Place used the Bank Account on at least one occasion prior to the May 19, 2015 transaction at issue in this case. *See* Dkt. 33-3 at 1. Specifically, on April 5, 2015, One Place sent $95,677.00 by wire transfer to the Bank Account. *See* Dkt. 49 at 1, 4. The wire transaction receipt stated that the wired funds were for "Invoice

#3927, Kalos Facial Plastic Surgery, Benjamin Strong, MD." *Id*. at 4. The funds from the April 5, 2015 wire transfer were subsequently received by Neograft Solutions. *Id.* at 1.

On May 19, 2015, One Place sent $96,950.00 by wire transfer to the Bank Account for the payment of "Invoice #3961, Zelko Aesthetics, Timothy Zelko, MD." *See* Dkt. 33-3 at 4. Oakes was not a party to invoice #3961, which was between Neograft Solutions and Zelko Aesthetics, LLC. *See* Dkt. 33-2 at 11. Nor was Oakes a party to an equipment finance agreement between Zelko Aesthetics, LLC and One Place. *Id*. Further, on May 19, 2015, there was no existing contract between Oakes and One Place. *Id*.

Neograft Solutions never received the $96,950.00 wired to the Bank Account. Dkt. 33-3 at 2. Instead, Oakes retained the wired amount and did not transfer the funds to Neograft Solutions. Dkt. 33-2 at 11. On October 31, 2018, after One Place learned that Oakes had retained the wired funds, One Place issued a demand letter requesting Oakes to return the $96,950.00. *See* Dkt. 33-2 at 12, 98–99. Oakes has not complied with One Place's demand. *See id*. at 12.

## II.   LEGAL STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549 (1999). The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the non-movant "may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255–57). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show there is a genuine issue for trial. *Stults*, 76 F.3d at 656. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. LOCAL R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007).

Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Evans v. Texas Dep't of Transp.*, 547 F. Supp. 2d 626, 636 (E.D. Tex. 2007) (citing *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp.*, 477 U.S. at 322), *aff'd*, 273 F. App'x 391 (5th Cir. 2008). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322–23.

## III. ANALYSIS

### A. Conversion

One Place first seeks summary judgment on its conversion claim. Dkt. 33-1 at 4. "The unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights, is in law a conversion." *Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 705 (5th Cir. 2009) (quoting *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). To prevail on a claim of conversion under Texas law, the plaintiff must show:

> (1) plaintiff owned, had legal possession of, or was entitled to possession of the property; (2) defendant assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with plaintiff's rights; (3) plaintiff made a demand for the property; and (4) defendant refused to return the property.

*Alan Reuber Chevrolet, Inc. v. Grady Chevrolet, Ltd.*, 287 S.W.3d 877, 888 (Tex. App.—Dallas 2009, no pet.). "[I]t is not necessary that there be a manual taking of the property in question." *Waisath*, 474 S.W.2d at 447. However, the defendant's actions must impair the plaintiff's ownership interest. *See Prewitt v. Branham*, 643 S.W.2d 122, 123 (Tex. 1982).

"Conversion claims for money must meet additional requirements." *United States v. Boardwalk Motor Sports, Ltd.*, 692 F.3d 378, 381 (5th Cir. 2012). Specifically, "[a]n action will lie for conversion of money when its identification is possible and there is an obligation to deliver the specific money in question or otherwise particularly treat specific money." *Id.* (quoting *Houston Nat'l Bank v. Biber*, 613 S.W.2d 771, 774 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.)). "Actions for conversion of money are available in Texas only where money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which

it is received or an intact fund; and (4) not the subject of a title claim by the keeper." *In re TXNB Internal Case*, 483 F.3d 292, 308 (5th Cir. 2007) (internal citations and quotation marks omitted).

Specifically, One Place contends the summary judgment evidence conclusively establishes that Oakes converted $96,590.00 when he received this amount by wire transfer and retained it. *See* Dkt. 33-1 at 4–5. The Court agrees. It is undisputed that the wired funds are specific chattel for purposes of a conversion claim. The wire transfer receipt indicated that the origin of the funds was One Place's bank account and further specified that the funds were for Invoice #3961 involving Zelko Aesthetics. Oakes has admitted that he was not a party to this invoice, and thus, there is no question that he neither owned nor was entitled to possess the wired funds. Because the Bank Account was in Oakes' sole control, Oakes assumed control of the wired funds to the exclusion of One Place. One Place made a demand for return of the wired funds, to which Oakes did not comply.

Furthermore, as the property at issue was money, One Place has shown that it wired the funds to the Bank Account for safekeeping and transfer to Neograft Solutions based on the parties' prior course of dealing—i.e., One Place had previously wired funds to the Bank Account that were transferred to Neograft Solutions. Thus, for the wire transfer at issue, One Place has established that the $96,590.00 was placed in the Bank Account for safekeeping for Neograft Solutions, that this amount was to be kept segregated for a specific invoice, substantially in the form in which it was received, and that Oakes had no right of ownership to the $96,590.00. *See In re TXNB Internal Case*, 483 F.3d at 308. Thus, One Place is entitled to summary judgment in its favor on its conversion claim.

### B. Money Had and Received

One Place pled an equitable claim for money had and received as an alternate to its conversion claim. *See* Dkt. 1 at 5. During oral argument, One Place indicated that the Court need not address this claim if it finds in favor of One Place on the conversion claim. *See* Dkt. 47. Because the Court recommends granting One Place summary judgment on its conversion claim, it is not necessary to address the money had and received claim.

### C. Texas Theft Liability Act

One Place also seeks summary judgment on its civil theft claim brought under the Texas Theft Liability Act ("TTLA"), TEX. CIV. PRAC. & REM. CODE §§ 134.001–134.005. *See* Dkt. 33-1 at 7–9. "The TTLA provides victims of a theft . . . with a civil action to recover damages, fees, and costs from the thief." *In re Powers*, 261 F. App'x 719, 721 (5th Cir. 2008); *see also* TEX. CIV. PRAC. & REM. CODE § 134.003. Theft is defined as "unlawfully appropriating property or unlawfully obtaining services as described by Section 31.03" of the Texas Penal Code. *See id.* § 134.002(2). Section 31.03 of the Texas Penal Code provides:

> (a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.
>
> (b) Appropriation of property is unlawful if:
>     (1) it is without the owner's effective consent;
>     . . . .
> (c) For purposes of Subsection (b):
>     (1) evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty; . . . .

TEX. PENAL CODE § 31.03(a)–(c); *see also Haler v. Boyington Cap. Grp., Inc.*, 411 S.W.3d 631, 635 (Tex. App.—Dallas 2013, pet. denied) ("A theft occurs when (1) property is (2) unlawfully appropriated (3) by someone (4) with intent to deprive the owner of that property."). "Appropriate"

means "to bring about a transfer or purported transfer of title to or other nonpossessory interest in property" or "to acquire or otherwise exercise control over property other than real property." *See* TEX. PENAL CODE § 31.01(4). The definition of property includes money. *Id.* § 31.01(5)(c). "A person who sustains damages resulting from the unlawful appropriation of property may recover actual damages, as well as additional damages not to exceed $1,000 and attorney's fees." *See Haler*, 411 S.W.3d at 635–36.

Because the wire transfer originated from One Place's bank account, One Place was clearly the owner of, and had a proprietary right to, the $96,590.00. *See* Dkt. 33-3 at 4 (transaction receipt, which identifies One Place's bank account as the originator of the wire transfer). Next, it is evident that Oakes unlawfully appropriated the $96,590.00. As stated above, a party unlawfully appropriates property by acquiring or exercising control over the property "without the owner's effective consent." *See* TEX. PENAL CODE §§ 31.01, 31.03. Here, the wire transaction receipt designated the funds for "Neograft" for "Invoice # 3961, Zelko Aesthetics, Timothy Zelko, MD." Oakes admits that he was not a party to this invoice and that as such, he had no right to the wired funds. It is also undisputed that One Place did not consent to Oakes retaining the funds and, in fact, demanded that Oakes return the funds to One Place. Oakes therefore lacked authority to acquire and exercise control over the wired funds. In doing so, he unlawfully appropriated the $96,590.00.

Further, it is readily apparent that Oakes intended to unlawfully appropriate the funds. To succeed on a TTLA claim, the plaintiff must establish that the defendant intended to unlawfully appropriate the property or obtain the services in question. *See Winkley v. State*, 123 S.W.3d 707, 713 (Tex. App.—Austin 2003, no pet.). "Even in cases where there exists no evidence directly indicating an intent to steal property, it has been held that such intent may be inferred from the words, actions, or conduct of the actor." *Id.* (internal citations omitted). Here, Oakes' intent to

12

appropriate the funds became apparent when he did not comply with, or otherwise respond to, One Place's October 31, 2018 letter demanding immediate return of the $96,590.00. *See Hedge v. State*, 229 S.W. 862, 863 (Tex. Crim. App. 1921) (holding that, in a case where an overpayment was used as the basis for theft, "the taking of property, though originally lawful, becomes theft when the possession of the taker came about through any false pretext, or if the taker obtained possession of such property having at the time the intent to deprive the owner of the value of same, and to appropriate same, and if same is so appropriated"); *see also Freeman v. State,* 707 S.W.2d 597, 605–06 (Tex. Crim. App. 1986) (indicating that when a fiduciary "decides, for whatever reason, to unlawfully and permanently deprive the lawful owner of the property, he is then acting in an unauthorized capacity, i.e., he is then exercising unauthorized control over the property" and has "committed the offense of theft"). Accordingly, the Court recommends granting summary judgment in favor of One Place on its TTLA claim.

### D. One Place's Request for Attorney Fees, Costs, and Prejudgment and Postjudgment Interest

"In diversity cases[,] state law governs the award of attorney's fees." *Transverse, LLC v. Iowa Wireless Servs., LLC*, 992 F.3d 336, 344 (5th Cir. 2021). Under Texas law, "[a]ttorneys' fees are generally not available for a conversion claim." *Broesche v. Jacobson*, 218 S.W.3d 267, 277 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). For TTLA claims, however, a prevailing party is entitled "to court costs and reasonable and necessary attorney's fees." TEX. CIV. PRAC. & REM. CODE § 134.005(b).

Having prevailed on its TTLA claim, One Place argues that it is entitled to attorney fees in the amount of $18,990.00 and costs in the amount of $695.00. *See* Dkt. 33-1 at 9–11; *see also* Dkt. 33-2 at 3–4. One Place bases the $18,990.00 amount on the lodestar method of multiplying the number of hours reasonably spent on the case by the reasonable hourly rates, with the result

adjusted as needed. *See* Dkt. 33-1 at 10; *Cruz v. Maverick Cnty.*, 957 F.3d 563, 574 (5th Cir. 2020). According to the affidavit of counsel for One Place, counsel's work in this case totaled 63.3 hours billed at a rate of $300.00 per hour. *See* Dkt. 33-2 at 3–4. Considering the issues presented in this case, the Court finds One Place's estimate of total billed hours and hourly rate to be reasonable. *See Silva v. BOKF, NA*, No. 4:21-cv-210, 2021 WL 1998688, at *5 (E.D. Tex. May 19, 2021) (finding "$300 per hour to be a reasonable, if not conservative, estimate of a billable rate in the community").

Under Texas law, a party seeking attorney fees must "segregate fees between claims for which they are recoverable and claims for which they are not." *Transverse*, 992 F.3d at 344 (quotation marks omitted). "The party seeking fees bears the burden of properly segregating them." *Id.* (citing *Merritt Hawkins & Assocs., LLC v. Gresham*, 861 F.3d 143, 156 (5th Cir. 2017)). "An exception to the fee-segregation requirement exists 'when the fees are based on claims arising out of the same transaction that are so intertwined and inseparable as to make segregation impossible.'" *Id.* (quoting *Kinsel*, 526 S.W.3d at 427). For the exception to apply, the party seeking fees must show that "discrete legal services advance[d] both a recoverable and unrecoverable claim." *Id.* (quoting *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006)). "Texas provides no general rule for determining when claims are sufficiently intertwined to come within the exception," and whether the exception applies is a "mixed question of law and fact." *Id.* (quotation marks omitted).

One Place's invoice does not sufficiently segregate its fees between recoverable and nonrecoverable claims.[5] The Court finds, however, that One Place's failure to segregate fees does

---

[5] Although there are a few line items in the invoice that are solely attributable to the conversion claim, the vast majority of the invoice does not segregate fees by claim. Specifically, of the 63.3 total hours billed in the case, only 2.7 hours are clearly marked as time solely expended on the conversion claim. *See* Dkt. 33-2 at 3–4 (1.7 hours expended on

14

not preclude recovery. *Transverse*, 992 F.3d at 346 & n.37. As the Fifth Circuit recently explained, a district court inclined to reduce fees due to a failure to sufficiently segregate can "simply allocate as a percentage of total fees the amount that likely would have been incurred even if the unrecoverable claims were not in the case, instead of requiring burdensome retrospective itemizations by claim." *Id*. at 347 (quotation marks and citations omitted). Based on its review of the record and One Place's invoice, the Court concludes that at least 90% of One Place's fees would have been incurred on the TTLA claim even if the conversion claim was not in the case. The Court therefore recommends that One Place's fee award be reduced by 10% to $17,091.00.

Next, One Place seeks to recover $695.00 in costs. *See* Dkt. 33-2 at 3. As stated earlier, a prevailing party in a TTLA case is entitled to recover "court costs." *See* TEX. CIV. PRAC. & REM. CODE § 134.005. One Place's cost bill, in addition to the $400.00 court filing fee, includes charges for "legal research fees" and a private process server. *See* Dkt. 33-2 at 3. In general, Texas law restricts "costs" to the "fees and charges required by law to be paid to the courts . . . for example, filing and service fees." *May v. Ticor Title Ins.*, 422 S.W.3d 93, 106 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Further, costs are narrowly defined by Texas statute to include the following:

> (1) fees of the clerk and service fees due the county; (2) fees of the court reporter for the original of stenographic transcripts necessarily obtained for use in the suit; (3) masters, interpreters, and guardians ad litem appointed pursuant to these rules and state statutes; and (4) such other costs and fees as may be permitted by these rules and state statutes.

TEX. CIV. PRAC. & REM. CODE § 31.007. General litigation expenses are also not recoverable as attorney fees to the prevailing party under the TTLA. *See In re Mud King Prod., Inc.*, 525 B.R. 43, 61 (Bankr. S.D. Tex. 2015). In this case, One Place does not explain how legal research fees and

---

research regarding Texas conversion pleading standards and 1.0 hour expended researching and drafting conversion section of complaint).

private process server fees are taxable as "court costs" under the TTLA. Dkt. 33-1 at 9–10. The Court therefore recommends denying One Place's request for such fees and limiting One Place's recoverable court costs to the filing fee, which amounted to $400.00.

Lastly, One Place seeks "pre-judgment and post-judgment interest at the maximum rate allowed by law." *See* Dkt. 33-1 at 9. "State law governs the award of prejudgment interest in diversity cases." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 172 (5th Cir. 2010). In Texas, prevailing parties receive prejudgment interest as a matter of course. *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1329 (5th Cir. 1994). There are two separate bases for the award of prejudgment interest—an enabling statute or general principles of equity. *International Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 499 (5th Cir. 2002); *see also Matter of Okedokun*, 968 F.3d 378, 392 (5th Cir. 2020). "[S]tatutory prejudgment interest applies only to judgments in wrongful death, personal injury, property damage, and condemnation cases." *International Turbine Servs., Inc.*, 278 F.3d at 499 (citations omitted). Because One Place's claims do not fall within the statutory provisions, prejudgment interest is governed by Texas common law.

"Texas common law allows prejudgment interest to accrue at the same rate as postjudgment interest." *Id*. The Texas Finance Code provides that the postjudgment interest rate is "five percent a year if the prime rate as published by the Board of Governors of the Federal Reserve System . . . is less than five percent[.]" *See* TEX. FIN. CODE § 304.003(c)(2). The current prime rate is 3.25 percent. *See* https://www.federalreserve.gov/releases/H15/ (last visited July 27, 2021). Accordingly, the five percent prejudgment interest rate applies. Prejudgment interest begins to accrue on the earlier of: (1) 180 days after the date the defendant received written notice of a claim; or (2) the date suit is filed. *Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 532–33. One Place is

16

thus entitled to recover prejudgment interest at the rate of five percent, which will be calculated from the date suit was filed on November 21, 2018.

Regarding postjudgment interest, federal law applies on "any judgment in a civil case recovered in a district court . . . including actions based on diversity of citizenship." *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 7 F.3d 1203, 1209 (5th Cir. 1993) (cleaned up). A court awards postjudgment interest pursuant to 28 U.S.C. § 1961. "Such interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Id.*; *see Fuchs v. Lifetime Doors, Inc.*, 939 F.2d 1275, 1280 (5th Cir. 1991) ("direct[ing] the district court to award post-judgment interest on the entire amount of the final judgment, including damages, prejudgment interest, and attorney's fees").

## IV. <u>RECOMMENDATION</u>

Based on the foregoing, the Court recommends the Motion (Dkt. 33) be **GRANTED** and summary judgment be **ENTERED** in favor of One Place on its conversion and TTLA claims. The Court also recommends that One Place be awarded $17,091.00 in attorney fees, $400.00 in court costs, pre-judgment interest at a rate of five percent, to be calculated as simple interest, and post-judgment interest at the applicable federal rate.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written

objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 2nd day of August, 2021.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE